Good morning, your honors. Alexander Silver from the Federal Public Defender's Office, representing Mr. Tupuola and Mr. Ma'ave, believe the cases were consolidated. Yes, that's true. Both cases, of course, raise the same exact issue. An old Hawaiian friend of mine once said that the Federal Public Defenders represent the last hope for the hopeless. And after this court's string of decisions in Lanier and Polk and Bride and Sapai and Chaney, I truly feel that I'm up here representing the last hope for career offenders to get any reprieve out of the 2007 crack cocaine amendment. How would you distinguish your client's situation from the situation in Sapai, which you're obviously familiar with. It came out at the end of September. Your honor, that case dealt with a career offender who got a downward departure due to a 3553A departure under Booker. But isn't the question that the cases you cited pose whether the sentence was actually based upon the guideline, isn't that ultimately the question? Right, ultimately. And here the sentence was based upon the career offender minima, wasn't it? In part it was, your honor. The statute, of course, uses the language based upon. And all it says is the sentence, it doesn't say how you arrived at the sentence, the sentence was based upon a guideline that has subsequently been lowered. And in all the cases that this court has held recently, it basically says that if you're a career offender and you get a departure for cooperation, for diminished capacity, for any other 3553A factor, that sentence is not based upon the amendment. And we agree with that. What we're pointing out, however, is that the 11th Circuit and the 2nd Circuit and a host of district court cases, courts from around the country, have carved an exception to that rule. And the exception is that when a career offender gets a departure specifically based upon a Chapter 2 rationale, that in comparison to the Chapter 2 guidelines, the court decides that the career offender guideline is too high. Then the courts are saying that is based upon a factor that has been amended because the 2007 amendment affected the Chapter 2 guidelines. This court hasn't addressed that issue. And none of the recent cases that the court has issued address that one specific minor exception to the general rule. And our argument is that those circuits are correct, that if you receive a departure based specifically and only specifically on a consideration of your Chapter 2 guideline, then you do fall within the amendment. And the problem that I have, of course, is that in my cases, that was posed to the judge and the judge said, no, I'm not going to do it. But our argument there is that even though the judge said no, the resulting sentence, which was still a career offender sentence, was still based upon that specific consideration. And that's all the statute requires. The statute doesn't say that the ultimate sentence has to be based upon a guideline that was affected. It merely says that the sentence was based upon... How is the sentence and the ultimate sentence different? You just said the sentence has to be based upon, but not the ultimate sentence. What's the difference? Because if a judge says, I understand these Chapter 2 guidelines, I understand your argument, it's just not big enough. I just don't feel right now that the discrepancy, the disparity is enough for me to do it. Otherwise, counsel, I would do it. I just don't think it's enough. Our position is that if in that kind of situation, even though the judge didn't do it, the resulting sentence was still based upon that Chapter 2 guideline. It just wasn't big enough. And now that the court, the commission, has lowered that Chapter 2 guideline, if defense counsel at sentencing, and I admit this is going to be a very small number of cases, if they made that specific argument, and the court said, no, I'm not convinced yet, then that should be treated no differently than when a judge says, I am going to do it. Maybe only six months off, but you know what? I think it's enough, even then, I'm going to do it. But I thought in this case, the sentencing judges simply relied on the career offender status. They did in the sense that... That's all they relied on. They didn't, they weren't wrestling with the disparity because they just said there are career offenders that are going to get the sentence that a career offender gets. I don't agree with that. There's specific language from the judge in Tupelo, for example, saying, I don't like what the Sentencing Commission has done with the career offender. I think it's too harsh, and I wish I had more leeway. But then he says, I'm at page 63 of Volume 2. That having been said, I'm going to give him the least amount of time that is possible in that I found him to be a career criminal. 188 months, supervised release, yada, yada, yada. Now, what could possibly change? Because, especially in that case that Your Honor just read the excerpts from, it appears from the record, at first, the judge was suffering a misconception that the career offender provision was a statute. And that it had no authority to overturn congressional intent. And there's pages where the judge says that, and finally the defense lawyer says, wait a second, Judge, this isn't a statute, this is a provision. And as the court knows under Reyes and other cases, it's clear Ninth Circuit law, the court could depart. And then the judge says, well, I don't like necessarily the career offender guidelines, but I'm going to do it. And that's exactly our argument. Yes, even in the cases in the Eleventh Circuit and the Second Circuit, they were still career offenders. That didn't change. Their designation was that they were career offenders. The court simply chose to go to a different guideline based upon its Chapter 2 consideration. Here, we have a judge saying, I am not going to make that consideration because I'm just satisfied at this point that disparity isn't enough. It's they're career offenders. And wasn't it therefore based upon being a career offender, period? I don't agree. How is it based upon the change that occurred? Because the sentence, the ultimate sentence, was based upon the career offender guideline in part. That sentence was also based upon the court's refusal when asked to depart based upon Chapter 2. It wasn't just simply a case where the judge wasn't asked, and we agree if they're not asked, we're not going to be here. But this was a case where the judge was asked to make the comparison. So you're saying the non-sentence, the sentence that didn't happen was based upon the change. Yes. I mean, that's really what you're saying. Yes. I'm talking about the legal consideration of how that. And, you know, in my brief, I made an analogy to buying a TV at Best Buy's. Because Best Buy says, I'll sell you that TV for $100. But if you can get a better offer, we'll match it. And, of course, when you buy that TV at Best Buy's, you end up buying it for $100. That's what you purchased. You didn't buy it at Costco for $95 for a different price. So, ultimately, you bought that TV at Best Buy's for $100 because they had the best offer. But even Best Buy says, if subsequently you can find a better offer, we'll lower our price. So the consumer's decision to buy the Best Buy's TV was not just based upon the $100 offer. It was based upon a comparison. And the 11th Circuit and the 2nd Circuit have said, when you make that comparison and you grant the departure, then we're going to give you even more room. And all I'm saying is, the legal analysis doesn't make any difference. You're saying, basically, if the leeway had been on the books at the time, the disparity had been recognized at that time by the Sentencing Commission, you're saying that the invitation to the sentencing judge to consider the disparity and not just go strictly on career offender status, that the district court might have taken a look at it. Exactly. And we have some comments along those lines. I just don't see a legal distinction between courts that say, if you grant it, you get more, or a court was specifically asked and said, it's not big enough for me at this time, I'm not giving it to you, but now it's changed. I notice I'm almost out of time. Yes. Unless the Court has specific questions. You may save the rest for rebuttal. Thank you. Good morning. May it please the Court, I'm Beverly Wi-Samashima, an Assistant U.S. Attorney for the District of Hawaii here on behalf of the United States. Now, the defense argument and position is not supported by either the plain and unambiguous language of 3582, nor the various up to seven sister circuits which have addressed this precise issue and have actually found in well-reasoned cases that where a defendant is sentenced as a career offender, that is a Chapter 4 application, and therefore, the crack cocaine amendments that are in Chapter 2 do not apply. In this case, Tupu Olu, especially, although there were comments that the Court made about the harshness of the sentence and the guidelines, there was a very clear and complete record about this defendant's career offender status. The prosecutor who handled the case made proffers with respect to actually reviewing the police reports relating to his various prior felony convictions and highlighted for the Court why this particular defendant had been in trouble with the law since 1982 on a continuous basis. So the record is very clear that the Court had no problem finding and making the designation that this was a career offender, and that's what she sentenced the judge on. I mean, excuse me, the defendant on. So we asked the Court. Until you get an adverse ruling before you say it. And I think that analogy about shopping at Costco is rather absurd in this context. I don't think there's a district court in this country who would agree that somehow the sentencing process that they go through is akin to comparison shopping. I mean, the bottom line is that it's the end result that matters. And in this case, there's no question, there's no dispute that the judges both found that these were career offenders, that Chapter 4 governed, and that that was how the defendant should be sentenced. So we asked the Court to extend Lanier, which was a July case, addressing the Chapter 3, the application of the Chapter 3 guidelines to this situation and follow the rationale on that. And I think the First Circuit in the Caraballo case had a very apt quote in its decision. And there again, it was a crack cocaine case. And the Court said, in response to the argument that the defense proffered, that somehow the sentence was based on also Chapter 2 because the Court had to look at it in order to reach its eventual ruling. And the Court said, the sentencing range in this case clearly contemplates the end result of the overall guideline calculus, not the series of tentative results reached at various interim steps in the performance of that calculus. That's a well-reasoned decision. It makes sense, Your Honor. It's the weight of the law in the various circuits. And it's consistent with the clear and plain language of 3582. So unless the Court has any further questions. I don't believe that we do. Thank you, Counsel. Thank you. Mr. Silver, you have about a minute remaining. Your Honor, I would just point out, we don't have a problem with the defendant's criminal history past. We have a problem with the offense level that was determined. And that was the arguments that were made at sentencing. Because for a career offender, you get both an enhancement on both the offense level and the criminal history. And this was a case where, for Ma'ave, he had 0.124 grams of crack cocaine. And for Tupaolo, he had 1.28. An unbelievably small amount. This was a weed and seed prosecution in the Chinatown area. And the arguments that were made at sentencing is, given that and given the Chapter 2 offense level, the Court should go down. And the Court refused, based on that argument, to go down. But as Your Honor said, if they had had the amendment in place and the discrepancy had been larger, maybe the Court would have gone down. And if the Court had gone down, I think Moore and Williams and McGee would apply. All we're saying is, even though the Court said no, that distinction doesn't mean anything. And the Court should follow Moore and McGee and Williams. Thank you, counsel. We appreciate the arguments of both of you. And the case just argued is now submitted.
judges: Beezer, Graber, Fisher